(No. 30259.

ANNA C. McCue *et al.*, Appellees, *vs.* HARRY R. CARLTON, Appellant.

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

BESSE & BESSE, of Sterling, for appellant.

SHELDON & BROWN, and ALEXANDER L. HAGLUND, both of Sterling, for appellees.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Appellees, the widow and children of John J. McCue, deceased, filed their complaint in the circuit court of Whiteside County to confirm title in them to that part of farm lot 13 of the Como purchase lying to the south of lots 1, 2, 3, and 4 in block 7 thereof, and to enjoin appellant from trespassing and committing waste thereon. The lands in question are those formed by accretion and those appearing as the result of the recession of Rock River and were no part of either of said lots as originally platted. From a decree in favor of appellees this appeal was taken.

On June 1, 1842, a settlement in Whiteside County known as Como was surveyed and platted, which included some farm lands adjacent to the settlement lots. The plat was filed with the recorder of deeds and recorded on June 10, 1853. To the south of said lots 1, 2, 3, and 4 the plat shows the northerly shore line of Rock River and some distance northerly therefrom it shows a dotted line forming the southerly boundary of said lots. There is a space shown on the plat between the shore line and said lot line.

Simeon Sampson acquired title to these four lots by deeds, the last one being in 1867. In 1868 he conveyed them to James M. Burr by deed which contained the words "except so much of said lots lying on the Rock River front

and below or south of the highest high water mark." Burr retained title to these lots until 1942 when he conveyed it to Joshua W. Null by warranty deed containing the same exception. Appellant obtained title to said lots by deed from Null October 18, 1944, which deed also excepted so much of said lots lying on the Rock River front and below or south of the highest high-water mark.

Appellees obtained title to said lot 13 by will from John J. McCue, who died in 1943. John J. McCue derived title by will of his father, James McCue. James McCue purchased said lot from Simeon Sampson in February, 1881. The record title to lot 13 has been in the McCue family continuously for three generations since February, 1881.

The four lots number from east to west, lot 1 being on the east. Walnut Street is the most easterly street of Como and lies east of said lot 1. Front Street joins Walnut Street at right angles and is immediately north of appellant's lots which front on that street. At the time Como was platted the north shore line of the river ran close to the southern boundary line of the said four lots.

Lot 13, the farm of appellees, lies to the east of Walnut Street and extends southerly to the northerly shore line of Rock River. Its southern boundary is considerably south of the south line of said four lots. The shore line forming the southerly boundary of lot 13, when platted, was irregular but extended in a general southwesterly direction. At one point where the river ran in a northwesterly direction it cut back sharply to the northeast for a distance forming a peninsula pointing to the northwest. It then turned sharply to the northwest and gradually resumed its southwesterly course. There was a slough or lagoon between the peninsula and the mainland to the north.

About 1906, a government dam was built across Rock River at Sterling, Illinois, which diverted much of the river into a canal. Thereafter the river was lowered causing

the peninsula on the lower part of said lot 13 to become more prominent and to appear above the water approximately as far west as the east line of lot 4 of appellant's property. For many years the northerly water line of the river has receded to the south and the tract of land in controversy has been built up by deposits from the river, and trees and vegetation grew thereon. The slough or lagoon between the peninsula and the mainland filled in, causing the peninsula to become a part of the mainland except in times of high water.

The bank of the river north of the tract in question is sloping and about 20 feet high. About half way down on this slope the McCue family has maintained a fence for more than forty years. There was also a fence running along the westerly and southerly sides of the disputed tract to the river. The McCues pastured this enclosure as far back as 1900 and from that time continuously to the filing of this complaint. There was no gate in the fence on the bank south of the Carlton lots, the entrance to this tract being through the farm lot of the McCues on the east.

After appellant obtained title to his lots he began taking gravel therefrom and caused water and gravel to flow onto part of the land in question. He also cut down trees on this land in 1944 and 1945 and began building a road across the lands in dispute to the south and west toward the river. He was leveling the bank of the river and had removed part of the fence running along the bank.

It is clear from the testimony that the McCue families for three generations have maintained a fence around the land in dispute and have pastured it. The owners of the Carlton lots at no time exercised any right of control or ownership over the lands in question nor disputed the right of the McCues in their possession and claim of ownership. Appellant did testify that, when he was pulling gravel on the bank of the river on the McCue farm in 1933, John McCue and Mr. Burr had a conversation in

which Burr said substantially that they were on the line between the McCue property and his property and that they had already pulled several hundred yards off his land and that if they pulled any further, he was going to expect a royalty. McCue was in possession of the ground and Burr did nothing more than make this claim. John McCue and William Burr are both deceased. Appellant testified they could not agree, and he pulled out and went back up the river with his equipment.

Appellant also produced a witness, Humphrey, who testified to a conversation between Burr, the owner of the lots, and Null, who was about to purchase them, in which Burr stated that they go clean to the river. Null testified to the same statement. This was a self-serving statement and is of no probative force as against the McCue right of possession. *Oswald* v. *Nehls,* 233 Ill. 438.

The foregoing is all the evidence offered by the appellant as to his claim of right to the land in controversy south of his lots. As against that, several of the appellees testified in their own behalf as to the adverse possession and claim of ownership of the property in controversy for more than forty years.

Sam Cohenour, who lived in Como seventy years, part of the time about forty rods down the river from the Carlton lots, and who in 1900 lived on adjoining lots, testified that the fence was there in 1900 and that he pastured his stock on the tract in question from 1900 to 1906 through arrangement with John J. McCue and did not make any arrangements therefor with Burr who owned the Carlton lots at that time; that the only people he knew who claimed the land other than the McCues were the Sampsons from whom the McCues obtained title. Witnesses William Wolber and James Wolf also testified that the fence in question had been there for more than twenty-five years and Wolf testified that the fence was there in 1907 and that the McCues had kept stock in there all those years and had

exercised the right of ownership over the land in question.

Accretions to land held under the twenty years' limitation law, or by claim and color of title and payment of taxes, go with the land to which they are attached. *Bellefontaine Co.* v. *Niedringhaus,* 181 Ill. 426.

The lots of appellant as originally platted did not extend to the shore line of the river. Moreover, the exception in the deed through which appellant acquired title fixed his southern boundary line some distance northerly of the original southerly lot line. To acquire·land by accretion there must be a natural and actual continuity of the accretion to the land of the riparian owner. 45 C. J. sec. 196(e), p. 528; *Bellefontaine Co.* v. *Niedringhaus,* 181 Ill. 426.

The appellant has shown no record title to the tract in question nor has he proved title by adverse possession. The exception in his deed separated the property conveyed to him from the river and he therefore can have no title to the lands formed by accretion. The accretions become a part of the land to which they are added and such accretions will follow whatever title covers the mainland. *Davis* v. *Haines,* 349 Ill. 622; *Brundage* v. *Knox,* 279 Ill. 450.

The appellees proved that the tract in question joined or connected with their mainland (farm lot 13) and that it had been fenced, pastured, farmed and otherwise used by them for more than forty years under claim of ownership. All the taxes on this tract have been paid by the McCue family. Appellant makes no claim that he or his grantor paid any taxes thereon. Possession, to be adverse and sufficient to establish title, must be hostile in its inception, it must so continue without interruption for twenty years, it must be actual, visible and exclusive, and be acquired and retained under claim of title inconsistent with the legal title of others. But proof of oral claim is not essential to establish title by adverse possession; it is enough that the claimant prove that he so acted as to show claim of title, and no mere words can assert title more

satisfactorily than continued exercise of ownership over the lands in question for the statutory period, using and controlling the property as an owner being the ordinary mode of asserting claim of title. *Leonard* v. *Leonard,* 369 Ill. 572.

From a careful consideration of the whole record it is our opinion that appellees are entitled to the relief and to the rights granted them under the decree and that the appellant has failed to establish any right, title or interest in the premises. The decree ordered the appellant to rebuild the portion of the fence he had damaged or destroyed but the appellees have filed their waiver of that requirement. That portion of the decree will be eliminated here and the decree will then be affirmed.

*Decree modified and affirmed.*