Mae Isham, Plaintiff-Appellee, v. Mary Cudlip and Marion Rublaitus, Defendants-Appellants.

Gen. No. 11,519.

Second District, Second Division.

January 9, 1962.

256

Kevin D. Kelly, of LaSalle, for appellant.

Peter F. Ferracuti, of Ottawa, for appellee.

CROW, J.

This is an appeal by the defendants-appellants Mary Cudlip and Marion Rublaitus from a judgment in favor of the plaintiff-appellee Mae Isham in a suit for replevin of a five room frame dwelling located in an area known as Piety Hill, R. R. #1, Oglesby, Illinois. The judgment was that the plaintiff have and retain the property replevined, and for costs. The cause was heard by the court without a jury.

The amended complaint alleged that the plaintiff had been in possession and occupancy of the dwelling from 1917 until the present and that the dwelling is

owned by the plaintiff; the land thereunder is owned by Bridget O'Keefe; the plaintiff has paid land rent to Bridget O'Keefe during that period of time; the plaintiff has been assessed as owner of the frame dwelling for personal property taxes and has in fact paid the personal property taxes on that personal property for the foregoing years; on March 20, 1960 the defendants wrongfully took possession of and detained the dwelling house and presently wrongfully detain such personal property from the plaintiff; the property was of a certain value; the plaintiff is lawfully entitled to possession thereof; the plaintiff has been damaged thus far a certain sum; and if the property is not returned the plaintiff will be damaged a certain amount for its value and a certain amount for the wrongful detention and use. The prayer of the complaint is for the return of the property, or its value, and damages for its wrongful taking and detention.

The defendants by their answer denied the allegations of the amended complaint to the effect that they had wrongfully taken possession of and detained the dwelling and presently wrongfully detain it, that the plaintiff is lawfully entitled to possession, that the plaintiff has been damaged, and that if the property is not returned the plaintiff will be damaged for the value thereof or for its detention and use; as to the remaining allegations of the amended complaint the answer says the defendants do not have sufficient knowledge to deny or admit and demands strict proof.

The defendants-appellants' theory is that the judgment granting possession of the property to the plaintiff is against the manifest weight of the evidence both as to the plaintiff's theory of right to possession by gift and right to title by adverse possession; the plaintiff was a tenant at will; the defendants had a superior right to the property; and replevin is not

258

the proper remedy to establish any equitable rights which the plaintiff asserts.

The plaintiff-appellee's theory is that the judgment is not against the manifest weight of the evidence; her right to possession or ownership is based upon sufficient evidence of gift and of title by adverse possession; replevin is the proper remedy, and, in any event, the defendants cannot urge any alleged error arising from an alleged incorrect theory of the case because they consented thereto and acquiesced therein and made no objection thereto in the trial court.

The evidence for the plaintiff was the testimony of the plaintiff herself, the County Clerk, an acquaintance of the plaintiff and William Cudlip, deceased, the Pastor of a Church who was well acquainted with the plaintiff, and several exhibits, consisting of various tax receipts, two endorsements to an insurance policy, various land rent receipts, a letter from the defendants' attorney to the plaintiff, a land lease of December 1, 1923 from the apparent owner of the ground to Herbert Isham, deceased, the plaintiff's husband, a bill of sale to the plaintiff from parties to whom the plaintiff had once sold the dwelling, a death certificate as to Mrs. William Cudlip, a death certificate as to William Cudlip, a bill of sale to the plaintiff from her son, his spouse, and her daughter, and the inventory in the estate of William Cudlip, deceased.

The evidence for the defendants was the testimony of the defendant Mary Cudlip herself, and one exhibit, being an agreement of April 28, 1917 between William Cudlip, deceased, the then apparent owner of the dwelling, and Herbert Isham, deceased, the plaintiff's husband, for the sale of the dwelling to Herbert Isham for a certain amount payable in installments.

There were no objections to any evidence by the plaintiff or defendants.

259

So far as material, it appears that the plaintiff moved into this home on Piety Hill in 1901. It was then owned by William Cudlip, since deceased. She was not related to him but had lived with him since she was 10 or 11 years old. She lived in this same house from 1901 to 1960 except for a few years. She and Herbert Isham were married in 1908. They lived elsewhere for a few years. They moved back to the dwelling here concerned in 1917 and lived there continuously from 1917 to 1960. In 1917 Mr. and Mrs. William Cudlip moved out and the plaintiff and her husband, Herbert Isham, entered into an agreement with William Cudlip to buy the dwelling, and they made payments for two or three years. She identified several receipts signed by William Cudlip, which were admitted into evidence, but which, for some reason, are not in the record here. She said that after making payments for two years William Cudlip told her and her husband that the dwelling belonged to them. He did not ask for any further payments. They made no further payments. Mrs. William Cudlip died in 1936. William Cudlip died in 1938. The inventory in his estate, by Herbert Cudlip, his son and administrator, filed in and approved by the Probate Court in 1939, does not list this dwelling as a part of his estate. An acquaintance of the plaintiff and William Cudlip said that, at the wake in 1936 following the decease of Mrs. William Cudlip, William Cudlip told her he wanted the plaintiff and her husband to have the "little house", meaning this dwelling. William Cudlip had one child, Herbert Cudlip, who died in 1954. The defendant Mary Cudlip is the wife and the defendant Marion Rublaitus is the daughter of Herbert Cudlip. The plaintiff said that after William Cudlip "gave" them the house she and her husband paid the taxes thereon to the present time. After 1917 the name on the tax records was changed to

260

Herbert Isham. The County Clerk confirmed the payment of taxes by Herbert Isham on the dwelling for 1949 and 1953, most of the time as personal property, and a couple of years as improvements on real estate. Receipted tax bills in the name of Herbert Isham for 1953–1958, the bills for 1953 being for real estate taxes on improvements, and the others for personal property taxes, are in the record. The plaintiff and her husband insured the house over all those years. Two endorsements on a policy for 1932–1935 in his name on the dwelling etc. are in the record. She and her husband paid the land rent (for the land only) to the owners of the land after they got the house from William Cudlip, in 1917, to the present time. She and her husband entered into a land lease agreement in 1923 with the owner of the land. Various receipts for land rent payments by the plaintiff or her husband to the landowner extending from 1920 to 1960 are in evidence. Over the years the plaintiff and her husband made improvements on the house consisting of three new roofs, a chimney to the kitchen, paint, a kitchen porch, sheet rock inside, new windows, doors, screens, and screen doors, garage, electricity, gas, water and sink in the kitchen, and paint inside. Prior to March, 1960, no one ever asserted to the plaintiff any claim of ownership to the dwelling. No one except she and her husband paid any rent thereon, or land rents, or taxes, or insurance premiums, or made any improvements thereto. Her husband, Herbert Isham, died in 1959 and their son, his wife, and their daughter executed thereafter a bill of sale to the plaintiff for this dwelling. She had sold the dwelling to someone else in January, 1960, and had left, though she had left some furniture there. That sale was shortly thereafter cancelled and the purchase price returned. She had locked the house when she left at the time of that sale. The defendants entered it with

their own keys, but not with her permission, and their attorney's letter to the plaintiff of March 14, 1960 indicated one of them claimed to be the owner and had "immediate plans for the use of the residence."

The ground lease of December 1, 1923 between Patrick J. O'Keefe, lessor, the apparent then owner of the ground, and Herbert Isham, lessee, the plaintiff's husband, leases the ground for 10 years from December 1, 1923, for a certain rent, and, among other things, provides ". . . and it is further agreed that at the termination of this lease, the said party of the second part (Herbert Isham) may remove all the improvements made by him, . . . leaving the ground in as good condition as when first occupied by him and those from whom he purchased . . . ."

The agreement of April 28, 1917 between William Cudlip, the defendants' predecessor, and Herbert Isham, the plaintiff's husband, provides:

> "The said William Cudlip hereby agrees to sell, and the said Herbert Isham hereby agrees to buy the following described goods and chattels to-wit: A one story frame dwelling house and its additions the same being located land leased from Patrick O'Keefe and known as Lot One of the East 30 acres of N.¼ and of the N.W.¼ of Sec 26, Township 33 Range One in the Town of LaSalle, County of LaSalle and State of Illinois.
>
> Said Herbert Isham agrees to pay therefor the sum of Five Hundred ($500) Dollars in installments, as follows: Eight Dollars on the first day of May, 1917, Six Dollars on the first day of June, 1917, and a like sum of Six Dollars on the first day of each succeeding month until the full sum of Five Hundred ($500) Dollars the consideration aforesaid is fully paid.

262

Upon said payments being fully made, the title to said property shall pass to and be in said vendee, his personal representatives, or assigns, but the said Herbert Isham shall remain in possession of the same as lessee until the said payments are fully made.

Until the payments are fully made the title to the property aforesaid shall remain in the vendor, and the vendee shall be deemed only a lessee of the same, and all installments paid shall be deemed paid as rent for the use of the said property until the whole sum is fully paid.

Upon default being made in any installment this contract shall cease and determine and the lessor may immediately take possession of said property and all payments previously made shall be deemed in compensation for rent and use thereof while in the possession of the lessee and as liquidated damages.

The Lessee is to pay all taxes charged against said premises and keep the said property insured in good fire insurance company, if requested to do so by the lessor."

So far as material, the testimony of the defendant Mary E. Cudlip was that William Cudlip had raised the plaintiff, though they were not related. The plaintiff and her husband Herbert Isham made a couple of payments on the Agreement of April 28, 1917 after Mary Cudlip and Herbert Cudlip were married in 1919. They made no more payments. They intended to buy it but never did. They put a roof or two on the house, painted, and papered. There were no improvements. William Cudlip in 1938 just before his decease, when he was 83 years old, told Mary Cudlip he could get

a renter for this dwelling and that would help as he was destitute. She did not assert any claim to this dwelling since the decease in 1938 of William Cudlip because "she did not want to make any trouble." The dwelling was not inventoried in the estate of William Cudlip, deceased, by Herbert Cudlip, administrator, her husband, "because it was personal." The defendants are in possession of the dwelling in controversy. The plaintiff had moved out. It was empty. She said the defendants had a bill of sale to this dwelling, but the defendants did not produce any such document.

The Replevin Act, Ch 119 Ill Rev Stats, 1959, par 1, provides:

> ". . . whenever any goods or chattels shall have been wrongfully distrained, or otherwise wrongfully taken or shall be wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession, in any court of competent jurisdiction."

Under paragraph 17 of that act "complaints in replevin may be filed in like manner as other complaints."

And under paragraph 21a of that act "The provisions of the Civil Practice Act, . . . and all existing and future amendments of said Act and modifications thereof, . . . shall apply to all proceedings hereunder in courts of record, except as otherwise provided in this Act."

The Civil Practice Act, Ch 110 Ill Rev Stats, 1959, par 45, provides, in part, "(1) All objections to pleadings shall be raised by motion. . . ."

And paragraph 42 of that act provides, in part: ". . . (3) All defects in pleadings, either in form or substance, not objected to in the trial court are waived."

The defendants filed no motion to dismiss the amended complaint and took no other steps in the trial court to question the propriety of replevin as an appropriate remedy for the plaintiff to adopt in an effort to recover this dwelling. Indeed, the defendants say in their brief here "The case was tried on the theory that the house was a proper subject of a Replevin Suit. Apparently by local custom, such houses, resting on leased land, are bought and sold by bill of sale as 'goods and chattels' and are taxed as 'personal' property." Having raised no objection to the amended complaint by motion, the defendants have waived any alleged defect therein not objected to in the trial court. The defendants cannot try the case on one theory in the trial court and then, for the first time, try it on a different theory and with a different approach on appeal: Humphrey v. Terry et al. (1955) 6 Ill App2d 42, 126 NE2d 507; Chicago and Great Western R. Co. v. Wedel (1892) 144 Ill 9, 32 NE 547.

Further, under the agreement of April 28, 1917 between William Cudlip, the defendants' predecessor, and Herbert Isham, the plaintiff's husband, this dwelling and its additions are specifically referred to as "the following described goods and chattels." And under the ground lease of December 1, 1923, between the then owner of the land and Herbert Isham, it is specifically recognized that the plaintiff or her husband might "remove all the improvements" at the termination of the lease. And the dwelling has been considered personal property for tax purposes and insurance purposes for many years.

Although generally things affixed to the realty become part of it, improvements may be made in such a manner, or under such circumstances as to render them distinct and separate property, depending in large part on the intentions of the parties, and

replevin may lie for a dwelling, as personal property, under proper circumstances: Ogden v. Stock (1864) 34 Ill 522; Dorr v. Dudderar (1878) 88 Ill 107; Cf. Salter v. Sample (1874) 71 Ill 430.

■ Accordingly, under the circumstances here presented, we think this dwelling constitutes "goods or chattels" within the meaning of the Replevin Act for which a replevin action will lie if the other prerequisites to replevin are present.

■■ The law will not require one in the possession of a chattel under claim of ownership to deliver it over upon the mere adverse claim of another, but will only disturb such possession upon proof of the right of such adverse claimant,—the presumption of the law is that one so in possession is prima facie entitled to remain in possession until the contrary is made to appear by proof,—any other rule would require every citizen to yield to the mere assertion of another: Martin et al. v. Martin (1898) 174 Ill 371, 51 NE 691.

Under the Limitations Act, Ch 83 Ill Rev Stats, 1959, par 16, "Actions . . . to recover the possession of personal property or damages for the detention or conversion thereof, . . . shall be commenced within five years next after the cause of action accrued."

■■ The purpose of statutes of limitation is to require litigation to be brought at a time which will permit the circumstances to be proved with some certainty, and before the facts have become obscure by reason of lapse of time or the defective memory of witnesses, or their death or removal: 25 Ill Law and Prac, p 175; the statute begins to run from, and not until, the time that the cause or right of action accrues: 25 ILP, pp 218, 229.

■ Where there is a right in the former owner to recover personal property but no action to recover such is brought within five years after the right

266

accrued this five years' statute of limitations bars any later action; the cause of action having once accrued, the statute of limitations began to run at once; the statute runs against the right of action, not against the particular holder thereof; and the principles of adverse possession as applied to real estate under other sections of the limitations act also apply to chattels under this section of the limitations act: O'Connell v. Chicago Park District et al. (1941) 376 Ill 550, 34 NE2d 836.

In an analogous case involving a contract to sell real estate for a certain sum payable at a future date, the conveyance to be made later when the purchase price had been paid, the buyer and his successors having gone into and remained in possession for more than twenty years, and the deferred purchase price having never been paid, it was held that all rights of the original seller and the plaintiff, his grantee successor, were barred by the twenty year statute of limitations, the plaintiff had not shown title in himself, and a judgment for the defendants, successors to the buyer, in an ejectment suit was affirmed: Richards v. Carter et al. (1903) 201 Ill 165, 66 NE 343,—the Court saying that as soon as the purchase money became due the statute of limitations commenced to run against the debt and continued to run until it was barred, the right of entry of the seller was complete as soon as the buyer made default in payment of the purchase money, and if the seller failed to commence an action for the recovery of the premises or to make an entry thereon within twenty years from the date of such default his right to bring an action to recover the same or to make an entry was expressly barred and neither he nor his grantee could afterwards do so.

And, similarly, under an agreement to sell chattels for a certain amount payable in installments, title not to pass until payment, the buyer taking and being in

267

possession for more than the statutory period, and no payments having ever been made,—the seller's right to demand a return of the property accrued when default was made in payment, there was at that time a clear and full common law remedy of replevin available to the seller, the statute of limitations, therefore, began to run from that time when the right of action accrued and replevin by the seller at a later date after the statute had run did not lie: Barton v. Dickens (1865) 48 Pa State Rep 518.

By analogy to adverse possession of real estate for the applicable period of time under the statute of limitations, upon which adverse possession is based (1 Ill Law and Prac, p 559), possession of goods or chattels to be adverse possession for the applicable limitations period must be hostile, actual, visible, notorious, exclusive, continuous, and under claim of ownership; hostile, however, does not imply an ill will, but only an assertion of ownership adverse to that of the true owner and all others; possession permissive in its inception may become adverse; the acts required to accomplish adverse possession may vary, depending upon the nature of the property and the uses to which it may be adapted; oral claims by the possessor are not essential; no mere words can assert title more satisfactorily than a continued exercise of ownership over property for more than the applicable statutory period,—using and controlling property as an owner is the ordinary mode of asserting a claim of title: Leonard et al. v. Leonard et al. (1938) 369 Ill 572, 17 NE2d 553; Hunsley et al. v. Valter et al. (1958) 12 Ill2d 608, 147 NE2d 356; McCue et al. v. Carlton (1947) 399 Ill 11, 76 NE2d 435; Turney v. Chamberlain (1853) 15 Ill 271; 1 ILP, p 565; and if there is adverse possession for the required time title to the property becomes thereby vested in and acquired by the possessor and may be asserted affirm-

atively against all the world including the former owner: Leonard et al. v. Leonard et al., supra; Scales v. Mitchell (1950) 406 Ill 130, 92 NE2d 665; 1 ILP, pp 559, 634; Cf. Hatch v. Heim (1898), CCA 7th, 86 Fed 436. Jacobi v. Jacobi et al. (1931) 345 Ill 518, 178 NE 88 referred to by the defendants does not militate against our views. And Zilch v. Young et al. (1900) 184 Ill 333, 56 NE 318 and Brown v. Smith (1876) 83 Ill 291, the principal other cases referred to by the defendants on the substantive points concerned, appear to have no bearing on the present case.

■ Under the agreement of sale of April 28, 1917 between William Cudlip, the defendants' predecessor, seller, and Herbert Isham, the plaintiff's husband, buyer, the purchase price for this dwelling was $500.00, payable in deferred monthly installments, title was to remain in the seller William Cudlip until the price had been paid, possession was to be in the buyer Herbert Isham, and "upon default being made in any installment this contract shall cease and determine and the lessor (Cudlip, seller) may immediately take possession of said property." Apparently the last monthly installment payment on the purchase price was made sometime in 1919 and no further payment was made thereon. Laying aside the question of whether there was a gift of the dwelling by William Cudlip to the plaintiff and her husband at or about that time,—1919,—and assuming, for the present, that there was not,—there necessarily then occurred at that time, about 1919, a default in the installment payments of the purchase price and upon such default, by the express terms of the agreement, the contract ceased and determined and William Cudlip, the seller, might immediately have taken possession of the property. As soon as any deferred installment became due and was not paid,—sometime in about 1919,—the statute of limitations commenced to

run, the right of re-entry by the seller was complete upon such default, and if he or his successors failed to commence an action for recovery of the dwelling or to make an entry within five years from the date of such default his and their right thereafter to bring an action to recover it or to make an entry was expressly barred. The seller's right to demand a return of the property accrued when default was made in payment, there was at that time a clear and full common law remedy of replevin available to the seller, the five year statute of limitations, therefore, began to run from that time when the right of action accrued. There being then, in about 1919, a right in the former owner, William Cudlip, to recover this dwelling as personal property, but no action to recover such having been brought by him within five years after that right accrued, the five years' statute of limitations bars any later action. That cause of action having once accrued the statute began to run at once.

 There is ample evidence from which the Court could find the plaintiff and her husband predecessor, Herbert Isham, the original buyer, have since at least 1919 to the present time been in the actual, visible, notorious, exclusive, and continuous possession of this dwelling,—in fact the defendants, successors to William Cudlip, the original owner and seller, apparently do not seriously dispute those facts. Whether such possession was hostile or under claim of ownership is debated. Hostile does not imply an ill will, but only an assertion of ownership adverse to that of the true owner and all others. No mere words can assert title more satisfactorily than a continued exercise of ownership over property for more than the applicable statutory period. Using and controlling property as an owner is the ordinary mode of asserting a claim of title. The possession of the plaintiff and

her husband, permissive in its inception in 1917 under the agreement of April 28, 1917, necessarily ceased to be permissive in 1919 upon default when the agreement itself ceased and determined and the seller could immediately have retaken possession. Since about 1919 she or her husband have paid the taxes thereon, the tax records have always been in their name, they have insured it, they paid the land rent on the underlying ground lease, they have entered into separate ground leases, and they have made extensive improvements. It was not their duty to do such under the Agreement of April 28, 1917 after default thereon and after that whole agreement had by its terms ceased and determined and the seller could have immediately retaken possession. And some of those things never were covered by that agreement. Their doing such after 1919 was not in the performance of any duty under that agreement or consistent with its continued existence. It had ceased and determined. No one else did any of those things after 1919. No one else ever asserted to the plaintiff any claim of ownership to the dwelling until March, 1960. And of particular further significance is the fact that Herbert Cudlip, the defendants' immediate predecessor and the only child of William Cudlip, deceased, the original owner and seller, did not, as administrator of the estate of William Cudlip, list this dwelling in the inventory as a part of that estate. That the defendant Mary Cudlip asserted no claim after the decease of William Cudlip in 1938, or even after the decease in 1954 of her own husband Herbert Cudlip, the only heir of William Cudlip, because "she did not want to make any trouble" is hardly an adequate explanation, and indicates, among other things, that presumably she was aware the plaintiff and her husband claimed title and ownership and that there would be trouble if the defendants asserted a claim.

271

And "because it was personal" does not answer why the dwelling was not listed in the inventory of William Cudlip's estate if the defendants or their predecessors really felt themselves to be the real owners thereof. There was adequate evidence from which the Court could determine the plaintiff and her husband have since 1919 exercised ownership over the dwelling for more than the applicable five years' period, have used and controlled it as owners, and have thereby asserted a claim of title and ownership adverse to the former true owner and all others, and that their possession since then was, therefore, hostile and under claim of ownership. Title to the dwelling therefore became thereby vested in and acquired by the possessor, Herbert Isham, and the plaintiff as his successor, and may be asserted affirmatively.

The trial court's findings and conclusions are not against the manifest weight of the evidence,—an opposite conclusion is not clearly evident: Rude v. Seibert (1959) 22 Ill App2d 477, 161 NE2d 39; Bauske et al. v. City of Des Plaines (1958) 13 Ill2d 169, 148 NE2d 584; People ex rel. Penrod v. Chicago & N. W. Ry. Co. (1959) 17 Ill2d 307, 161 NE2d 126.

Under the circumstances, it is not necessary to discuss other matters referred to in the briefs.

The judgment for the plaintiff-appellee will be affirmed.

Affirmed.

SPIVEY, P. J. and WRIGHT, J., concur.