Robert Melliere and Margaret Melliere, Plaintiffs, v. Florence T. Kaufmann, William Kaufmann, and Unknown Owners, Defendants.

Florence T. Kaufmann and William Kaufmann, Counter-Plaintiffs-Appellants, v. Robert Melliere and Margaret Melliere, Counter-Defendants-Appellees.

Gen. No. 67–32.

Fifth District.

March 22, 1968.

Rehearing denied April 19, 1968.

Sprague and Bock, of Belleville (John R. Sprague and Ralph T. Stenger, of counsel), for appellants.

Kassly, Weihl, Carr & Bone, of East St. Louis (Elmer C. Weihl, of counsel), for appellees.

MORAN, J.

Defendants appeal from a judgment of the Circuit Court of Monroe County, quieting title to Tax Lot 3, Section 8, T. 4 S. R. 11 W. of the Third P. M., Monroe County, in the plaintiffs, Robert and Margaret Melliere, and dismissing the counterclaim of defendants which demanded that title be quieted in the defendants.

The property in question is a triangular parcel of land which is bordered on the west by the Mississippi River, on the north and east sides by the land referred to as the James' farm, and to the south and east by a tract referred to as the Pape farm. These two farms are now owned by the defendant, and thus Tax Lot 3 is bordered on three sides by the defendant's property and by the river on the fourth side.

This property was evidently a swampy island, consisting of approximately 24 acres, which was sold by the County of Monroe to D. M. Hardy in 1897 and subsequently conveyed to William Demint, who, at his death in 1927, left Corinne Mitchell a life estate in the property. In April, 1964, Corinne Mitchell and the owners of the remainder conveyed the property to the plaintiffs. Although the evidence is not clear on this point, sometime around 1910 the course of the Mississippi River changed and thereby

243

bypassed the island. The resulting slough between the island and the shore has been diminished through accretion.

Shortly after purchasing the land, the plaintiffs were ordered off the property by the Kaufmanns. Thereafter, in March, 1965, various members of the Pape family conveyed to Mrs. Kaufmann all their interest in Tax Lot 3 by quitclaim deeds. The plaintiffs instituted this suit to remove the claims of the defendants as a cloud upon the title. The defendants counterclaimed, claiming title to the property by adverse possession, contending that the Kaufmanns and their predecessor in title have been in possession continuously, openly, notoriously, and adversely for more than twenty years. Ill Rev Stats c 83, § 1 (1965).

Since the appellants claim ownership of the fee by adverse possession, they must show that it had commenced prior to the creation of the life estate of Corinne Mitchell, for otherwise it could not commence against the remainder until after the termination of the life estate. Beasley v. Beasley, 404 Ill 225, 88 NE2d 435. Thus, it was necessary for the defendants to prove that adverse possession commenced prior to 1927 and continued for a twenty-year period. The trial judge, sitting without a jury, found that any claim of adverse possession did not commence prior to the death of Demint. The appellants contend that this finding was contrary to the manifest weight of the evidence. The theory of adverse possession is based on the Kaufmanns' and their predecessors' use of the Pape farm.

Clarence Pape testified on behalf of the counterclaimants that he was 55 years of age and moved on the farm around 1914 or 1915, when he was four or five years of age and lived there until 1929. He hunted, fished, and trapped all over the ground for thirty-five years; that his father cleared and planted approximately

244

thirty acres of the land until he died in 1931 and after that, it was cleared and planted by their tenants until 1946; that they also harvested and sold lumber from it continuously.

George Pape, 73 years of age, testified on behalf of counterclaimants that he lived on the Pape farm for one year when he was working for his father, Herman Pape; that his father built his home on the Pape farm and lived there for about fifteen years, between 1920 and 1930; that he built the home about thirty-five years ago and lived there until the time of his death; that they grew crops on the farm and cut and sold wood. When asked if any part of Tax Lot 3 was cleared while he and his family had the property, he stated, "Just how close they got to it, that is hard to say. They went out to where the biggest patch of ground was open to get corn in." Some corn was planted; and, in order to plant the corn, the timber had to be cleared. After his father died in 1922, his brother, William, lived in a building on Tax Lot 3. They sold the property a few years after his father died in 1922; but until it was sold, they rented the farm, including Tax Lot 3, to a Mr. Menke. He testified that he was present when sand was hauled from Tax Lot 3, which was used in the construction of a house. His brother, William, lived in a house there, while he (George) lived there.

Emma Pape testified on behalf of counterclaimants that she was 72 years of age and the wife of George Pape. She had been on the Pape Farm around 1910–1912 or 1915, but never saw the house that George testified his brother lived in. She never went out on the land and did not know whether they cut timber on it.

Louis Pape, 66 years of age, testified on behalf of counterclaimants that his father, Herman, died in 1931; that he was 16 years old when they moved to the farm in 1916 or 1917 and he stayed there until he was married

245

in 1923. Before 1931 there was a certain amount of corn planted, but not much. While he was home, his father and brothers did not do any hunting or fishing on the ground. His brother, Bill, lived in a house; but he did know when it was built, because he was gone from there at the time. Bill's house was built before he moved back on the farm in 1932 or 1933. He stayed on the farm for about eight years. There were crops out to the river, but it was not cleared too far out. "It was the length of the farm and a piece extending west to the river."

Hulda Pape, 64 years of age and the wife of Louis Pape, testified on behalf of the counterclaimant that she married Louis in 1963, having been first married to his brother, Tom, in 1925; that she lived on the property for two years, between 1925 and 1927. She did not know where the house, which William lived in, was and did not know anything about crops being planted or timber being cut on Tax Lot 3.

Leona Allgire testified on behalf of counterclaimants that she lived on the James' farm from 1918 until 1943. She testified that on Tax Lot 3 timber was cut periodically; that the Papes farmed as near the river as was cleared; that Herman Pape's son, William, had a house thereon; and that the Papes hunted and fished on this property. In 1918, this witness was four years of age. In addition, her testimony is not clear whether these acts occurred prior to or subsequent to 1927.

The testimony of the various witnesses that hunting, timber cutting, and other acts of dominion had been performed on the property for numerous years was frequently confusing. In many instances it was impossible to tell whether the witness was referring to acts which actually took place on Tax Lot 3 or on other portions of the land. There were also many uncertainties as to whether the acts occurred prior to 1927. The appellants called some witnesses who knew nothing about the loca-

tion of Tax Lot 3 and the activities, if any, which occurred thereon. For example, Hulda Pape, the wife of one of the Papes, lived on the farm for two years but did not know whether any control was exercised over Tax Lot 3. Mens Josten, also a witness for the appellants, testified that there was corn growing there, but was uncertain whether it was on Tax Lot 3 or Pape land. Clarence Pape testified that they hunted on the property for thirty-five years, while his brother, Louis, testified that neither his brothers nor his father hunted on the ground. Clarence also testified that William's Cabin was built in the 1930's. On cross-examination Clarence said that he did not mean that thirty acres were cleared solely from Tax Lot 3, but he meant this amount was cleared from the farm as a whole—perhaps only seven or eight acres were cleared from Tax Lot 3. He also testified that in much of the direct examination he was talking about the Pape farm as a whole and not Tax Lot 3. Although Herman Pape had died in 1931 and the Pape farm was sold in 1946, George Pape testified that his father died in 1922 and that the farm was sold a few years after his father's death. Although the Papes testified that William's house was on Tax Lot 3, Menke testified that the house was not on Tax Lot 3. In addition, there were numerous conveyances of the Pape property in the record, none of which included a description of the property in question.

The testimony contained statements such as "the Papes claimed all the way to the river," or "there was corn planted to the river." The Papes' farm had river frontage to the south of Tax Lot 3; and it was often difficult to determine if the witnesses, in making these statements, were referring to the river as it passed Tax Lot 3, or as it passed the Papes' property.

■ ■ We are aware that Tax Lot 3 was frequently subject to flooding, and thus the dominion over the land

would be necessarily restricted. However, we recognize that where property is so situated as not to admit of permanent improvements or annual cultivation, it may, nevertheless, be subject to adverse possession. In such a case the test to determine possession is:

". . . the continued claim of the party, evidenced by public acts of ownership such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim. . . . The failure in one year or more to pasture the land or to use it otherwise, occasioned by high water overflowing the land, would not of itself, necessarily constitute an interruption of the possession." Burns v. Curran, 282 Ill 476, 480, 118 NE 750.

The possession is not required to be more full than the character of the land admits. Walter v. Jones, 15 Ill2d 220, 154 NE2d 250.

█ █ The acquisition of title by adverse possession requires the strictest type of proof. Clavey v. Bobzien, 6 Ill2d 549, 129 NE2d 688. Since the evidence in the present case was somewhat conflicting and confusing, and since proof of adverse possession must be clear and convincing, we do not believe that the trial court's finding that adverse possession was not proved prior to 1927, was against the manifest weight of the evidence. In Cagle v. Valter, 20 Ill2d 589, 170 NE2d 593, a similar factual situation was present. The plaintiff claimed title by adverse possession to a tract of river-bottom land. The plaintiff became the record owner of the adjoining property and lived on this property for seven years, and then it was occupied by tenants for a number of years. At the conclusion of the proof, the trial court dismissed the complaint. The issue on appeal was whether the trial

court was justified in finding that the proof was insufficient to establish title by adverse possession. The Supreme Court held that "the inconsistencies in the record before us leave many questions in doubt, which could best be determined by the trial judge, who heard the testimony of the witnesses." Id. at 593.

The present case, likewise, contains many inconsistencies and uncertainties. Clarence Pape was the one witness who seemed to be familiar with the location and use of Tax Lot 3. He testified that the family claimed and used the property since 1915. However, as was pointed out, this witness was only 4 or 5 years of age in 1915. The acts of control over Tax Lot 3 which he witnessed and participated in during, for example, the year 1930 or 1935, may or may not have occurred in 1915. His age at the time, plus the conflicting testimony of other witnesses, presents a question of fact. The trial judge was best able to decide the issue. We do not feel that the evidence presented constitutes the requirement of the strictest type of proof; and, therefore, the finding of the court was not contrary to the manifest weight of the evidence. Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.