Irvin P. Davis *et al.,* Plaintiffs-Appellees, *v.* Donald E. Devore *et al.,* Defendants-Appellants.

(No. 11870;

Fourth District—January 8, 1974.

*Rehearing denied February 8, 1974.*

Richard P. Reising and Marshall A. Susler, both of Owen, Roberts, Susler & Taylor, of Decatur, for appellants.

Rosenberg, Rosenberg, Bickes & Johnson, of Decatur, for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

A decree in declaratory judgment determined that the common property line between Lots 7 and 15 in Brookview Subdivision

> "* * * is the dotted line shown upon the Plat of Brookview Subdivision and marked with a dimension of 314 feet, which said line is also described as the line shown on the Plat of Brookview Subdivision commencing 317 feet North of the southwest corner of Lot 15 of the Brookview Subdivision, which said point is also 466.5 feet South of the northwest corner of Lot 7 of said Subdivision, thence East in a straight line 412.24 feet to the northeast corner of the said Lot 15 of Brookview Subdivision."

It further adjudged that defendants' affirmative defense claiming title by adverse possession be dismissed for want of equity. Defendants appeal.

The plat was introduced into evidence.

MAP OF BROOKVIEW
SCALE 1" = 200          JUNE 22, 1945
FRITZ LEROY WASHBURN SR.
SURVEYOR
NOTE—
○ INDICATES IRON PIN.

The Subdivision was platted in 1945. The surveyor and the individual laying out the subdivision were dead or physically unable to testify. Ill. Rev. Stat. 1969, ch. 133, par. 50 provides that plats issued by a registered land surveyor shall be received as prima facie evidence in the court of the State.

It was stipulated that plaintiffs acquired title to Lot 7 on February 14, 1968. The defendants hold title through conveyances of Lot 15 as platted, *i.e.*, the defendants hold through two warranty deeds conveying

title to the west 255 feet of Lot 15. All conveyances in defendants' chain of title were "as per plat recorded". Testimony indicates that there is a parcel consisting of the east 157.24 feet of Lot 15 for which the title is in another.

■■ The meaning of a plat is a question of law for the court, and in interpreting such the same rules of construction apply as in the construction of a deed. The meaning of every word, figure and line must be considered. (*Sikes v. Moline Consumers Co.*, 293 Ill. 112, 127 N.E. 342.) As with a deed, the instrument must be construed as a whole. *Schreier v. Chicago & Northwestern Ry. Co.*, 96 Ill.App.2d 425, 239 N.E.2d 281.

The trial court determined that the true common boundary of Lot 7 and the parcel of Lot 15 owned by defendants was represented by the dotted line marked AB on the plat. It is argued that such appears inconsistent with the representation of all other interior lot lines on the plat as solid lines. In considering the plat as a whole, however, there are many other inconsistencies in accepting the solid line AC as the platted southern boundary of Lot 7. Upon the premise that the scheme of the plat as a whole must be reviewed, the line AC would be the only internal boundary in the subdivision which was not measured at right angles. Lots 15 and 7, upon such premise, are created with five sides, whereas the other lots have four. A planned diagonal interior line would seem more logically drawn from the southwest corner of Lot 7 to its southeast corner, rather than to the point designated A which is 33.4 feet west of the latter corner.

We note that each boundary platted has its dimensions clearly measured. The northern boundary of Lot 15 is measured as 412.24 feet along the line AB and its projection to the east which is identical with the southern measured boundary shown. Upon defendant's hypothesis there would be no northern measurement of the boundary of Lot 15 but such would have to be computed through the measurement of an angle northwest from point A.

Lot 7 has a west boundary line in common with the east boundary of Lot 19. Lot 7 is measured as 466.5 feet, while the east boundary of Lot 19 has the indicated measure of 391.5 feet, a variance of 75 feet. The western boundary of Lot 15 is measured as 317 feet, which is the identical measurement with its eastern line. Upon defendants' hypothesis, the western line of Lot 15 would be identical with the eastern boundary of Lot 16. This is measured as 393 feet, or a variance of 76 feet.

Upon defendants' hypothesis there would be no reason for the pin placed at point B. We note that the pins placed at points B and C are shown with flare marks. The east boundary of Lot 19 shows such flare marks at the northeast corner and the southeast corner (point C) which

enclose the measured 391.5 feet. The west boundary of Lot 7 shows flare marks at its northwest corner and at point B enclosing the measured 466.5 feet. Similarly, on the west line of Lot 15, such flare mark at point B reflects the measurement of 317 feet from the southwest corner of the lot. Consistent with such practice, the flare mark at the northwest corner of Lot 7 and the flare mark at point B would enclose the measured 466.5 feet. The recited scheme of marking by flares appears identical to that employed at the common eastern line of Lots 8 and 14 and the western line of Lots 9 and 13, where there is a similar offset in the east-west line.

Except for the contentions of defendants in platting the southern portion of the subdivision, the accommodation to the angle created by the railroad and the highway consistently has been that of a right angled offset of the east-west lines which form the southern boundaries of Lots 8, 9, 10 and 11 and the northern boundaries of Lots 14, 13 and 12.

The consideration of the many aspects suggesting the scheme in the preparation of the plat supports the conclusion of the trial court.

Defendants here argue that the owners of adjacent lands may adopt a division line which may be employed through long acquiescence and that such may be employed to aid in the construction of the plat. This issue was not presented to the trial court and may not be considered here.

Defendants offered testimony to support a claim of adverse possession. Such claims take as a premise the coincidence of a fence and the solid line marked AC on the plat. It is recalled that the plat of the subdivision is dated June, 1945. One Higgins testified that his father owned Lot 15 from 1947 to 1959. The witness did not reside on the premises but testified that in 1948 his father restored an old fence and raised livestock up to such fence. Higgins, in this testimony, could not relate the location of the fence to the line A on the plat other than a statement of his conclusion. One Handley purchased the property in 1959. He testified that the fence "looked to me like it had been there a pretty long time". In photographs placed in evidence, he identified other unused old fence posts set to the north of the fence in question. He grazed the land up to the fence but did not know who owned Lot 7. He testified that he had repaired fence wires on some old white posts. It was his opinion that the fence was on the line A.

■■ Defendant DeVore testified to his purchase of the west 225 feet of Lot 15 and his use of the lot up to the fence for keeping a pony, a couple of calves and subsequently a dog run. He had observed a surveyor searching for pins in 1968. This appears to have been a surveyor employed by plaintiffs. The surveyor questioned defendants' right to the

land up to the fence. Defendant checked his abstract which showed line AB as a solid line and defendant concluded that such line was the northern boundary of his lot. He testified that he went to Davis with the suggestion that "they move the fence". He discovered that the recorded plat showed AB a dotted line. He told plaintiff "that if he had not closed the deal I definitely would not move the fence". Such testimony supports the conclusion that defendant was not asserting a clear claim hostile and adverse to all others, but was asserting a claim to that which was his by conveyance. In other words, his claim arose not from adverse possession but from his reading of the plat defining the boundaries of Lot 15. This is not such an assertion of ownership adverse to the true owner as supports hostile adverse possession. *Isham v. Cudlip*, 33 Ill.App.2d 254, 179 N.E.2d 25.

■■ The trial court concluded that defendants' witnesses had neither the knowledge of fact nor the qualification to establish the coincidence of the existing fence with the line AC and noted that there had been evidence of three fences laid out or placed at unspecified times, rather than one which established a boundary. Establishing title by adverse possession requires direct proof and the trial court may but ascertain the weight of the testimony and the credibility of witnesses. *Melliere v. Kaufmann*, 93 Ill.App.2d 242, 236 N.E.2d 147.

The judgment is affirmed.

Affirmed.

CRAVEN, P. J., and SIMKINS, J., concur.