DON MEEKER, Plaintiff-Appellant, *v.* GLEN SUMMERS, Defendant-Appellee.

Fifth District  No. 78-422

Opinion filed March 28, 1979.—Rehearing denied May 1, 1979.

William E. Aulgur, of Eldorado, for appellant.

Harris and Lambert, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff Don Meeker appeals from the judgment of the Circuit Court of Franklin County granting defendant Glen Summers' motion to dismiss plaintiff's complaint in replevin.

In January of 1965, plaintiff leased a Meeker deluxe drying bin used to dry and store grain to one LeRoy Hines by written agreement. As provided in the agreement, the duration of the lease was to be 5 years with the rent to be paid in five annual installments. The first payment was to be made on or before October 1965. After Hines took possession, he paid the first rental two months late and thereafter stopped making additional payments. Paragraph 11 of the lease provides:

"In the event of any default in making any rental payment hereunder, * * * then all remaining rental payments hereunder shall at the Lessor's option become due and payable forthwith.

In the event of such breach, the Lessee agrees to make available to the Lessor immediately upon demand the leased property in as good condition as when received, ordinary wear and tear alone excepted. The Lessor is hereby authorized to enter any premises where the leased property is located and take possession of and remove it to its own premises without any liability to the Lessee."

In its answers to defendant's interrogatories, plaintiff admitted that Hines defaulted in his payments under the lease on November 1, 1965.

In 1973, Hines, still in possession of the grain bin, sold it to defendant, who paid full value without notice of plaintiff's alleged interest. Plaintiff's first affirmative step to recover the bin occurred in 1974 when his attorney attended a meeting of creditors in the bankruptcy proceedings involving Hines. Upon questioning Hines, the attorney learned that defendant had acquired the bin. After making an unsuccessful attempt to recover the item in 1975, plaintiff initiated this present action on June 14, 1976.

Section 15 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 16) provides that an action to recover the possession of personal property or damages for the detention or conversion thereof shall be commenced within 5 years after the cause of action accrues. In general, a cause of action accrues when facts exist which authorize one party to maintain an action against another. (*Aetna Life & Casualty Co. v. Sal E. Lobianco & Son Co.*, 43 Ill. App. 3d 765, 357 N.E.2d 621 (2d Dist. 1976), *aff'd*, 69 Ill. 2d 126, 370 N.E.2d 804 (1977).) If a former owner has a right to recover personal property but fails to initiate a replevin action within 5 years after that right accrues, the statute of limitations bars any later action. *Isham v. Cudlip*, 33 Ill. App. 2d 254, 179 N.E.2d 25 (2d Dist. 1962).

In the present case, plaintiff did not initiate these proceedings within the applicable time period. Under the terms of the written lease, plaintiff was authorized to enter the lessee's premises and take possession of and remove the grain bin upon a breach of the agreement. A careful reading of the rental agreement reveals that such a breach occurred when the lessee failed to make the first payment on time. Plaintiff, having admitted that a default occurred on November 1, 1965, therefore had by the express language of the written agreement the right to enter the property belonging to Hines and remove the bin. As plaintiff then had the immediate right to take possession of the grain bin and maintain an action to recover such property, it is clear that plaintiff's cause of action accrued on the date of default, thereby invoking the running of the 5-year statute of limitations.

In the analogous case of *Isham v. Cudlip*, the plaintiff and her husband entered into an installment contract with a Mr. and Mrs. William Cudlip to purchase a home. The home apparently was considered

personal property by the parties and was treated as such at trial. The written agreement, dated April 28, 1917, provided that "[u]pon default being made in any installment this contract shall cease and determine and the lessor may immediately take possession of said property * * *." Plaintiff and her husband stopped making payments on the agreement after two or three years but continued to reside in the home. In 1960, defendants, the daughter-in-law and granddaughter of William Cudlip, took possession of the property without plaintiff's permission. Thereafter plaintiff brought an action in replevin to recover the property. The appellate court, in affirming the judgment in favor of plaintiff, concluded that defendants no longer had the right to demand the return of the home. It stated:

> "[T]here necessarily then occurred at that time, about 1919, a default in the installment payments of the purchase price and upon such default, by the express terms of the agreement, the contract ceased and determined and William Cudlip, the seller, might immediately have taken possession of the property. As soon as any deferred installment became due and was not paid,—sometime in about 1919,—the statute of limitations commenced to run, the right of re-entry by the seller was complete upon such default, and if he or his successors failed to commence an action for recovery of the dwelling or to make an entry within five years from the date of such default his and their right thereafter to bring an action to recover it or to make an entry was expressly barred. The seller's right to demand a return of the property accrued when default was made in payment, there was at that time a clear and full common law remedy of replevin available to the seller, the five year statute of limitations, therefore, began to run from that time when the right of action accrued. There being then, in about 1919, a right in the former owner, William Cudlip, to recover this dwelling as personal property, but no action to recover such having been brought by him within five years after that right accrued, the five years' statute of limitations bars any later action." (33 Ill. App. 2d 254, 269-70, 179 N.E.2d 25, 32-33.)

Although in the present action the written agreement did not expressly provide that the contract ceased upon default, the failure of Hines to make any payments after 1965 constituted a breach of the leasing agreement and entitled plaintiff to enter the premises and remove the chattel. As plaintiff had the same right to demand a return of the property as the seller did in *Isham*, we believe that the cause of action accrued upon the default in payment and that the 5-year statute of limitations then began to run.

Plaintiff argues, however, that when a lease contains an acceleration

clause for nonpayment of rent to be enforced at the option of the lessor, the statute of limitations does not begin to run until all the payments, as originally fixed, are due. It is true that under the terms of the lease plaintiff is given the option to accelerate the payments upon default. But the decision whether or not to declare all payments due and owing has no bearing on plaintiff's right to take possession of the grain bin. The lease contains separate provisions governing time of payment and right of possession; and it is those provisions concerning possession and not accelerated payments that are applicable in this situation.

■■ Even if we were able to assume that the cause of action did not accrue when Hines defaulted in November of 1965, it is clear that it accrued no later than the time of the expiration of the lease in January 1970. The statute of limitations therefore ran until January of 1975, which was approximately 18 months prior to the initiation of this present action.

Paragraph 17 of the lease granted Hines the option to extend the lease upon the occurrence of following conditions:

> "At the end of the term of this lease, *provided the rental shall have been paid in full on the dates due,* the Lessee shall have the further option, *on ninety (90) days' written notice to the Lessor prior to the end of the term,* to extend the lease for an additional period of 5 years * * *." (Emphasis added.)

Hines did not meet the conditions contained in the lease and therefore did not have the option to renew the agreement. Defendant, however, argues that where a tenant continues to hold possession of property after the termination of a lease a new periodic tenancy is created by implication upon the terms of the old lease. We fail to see how the lease could have been extended or continued when Hines failed to honor any of its provisions. The record is clear that Hines did not make any payments on the lease after 1965. In addition, it is clear that neither party to the agreement ever acknowledged that the lease continued or existed following its expiration. In fact, the possession of the grain bin by Hines for eight years without payment and the eventual sale of the property to defendant are more indicative of an adverse claim of ownership than a continual leasing arrangement. (Compare *Eilers v. Eilers,* 350 Ill. App. 453, 113 N.E.2d 191 (3d Dist. 1953), in which a periodic tenancy was created following the expiration of a leasing agreement where, although the tenant had failed to make rental payments under the old lease, there was evidence that the lessor consented to the "holding over.") We note that if we permit plaintiff to determine that a leasing arrangement continued, when no conditions of that arrangement were ever honored, then the cause of action for purposes of the statute of limitations would accrue only at plaintiff's option. This position, not supported by any authority, is clearly untenable.

For the reasons stated, the judgment of the Circuit Court of Franklin County is affirmed.

Affirmed.

G. MORAN, P. J., and KASSERMAN, J., concur.