(No. 97-CC-0423—

REYNOLDS STATE BANK, Claimant, *v.* OFFICE OF THE STATE GUARDIAN as Guardian of the Estate of GLENN A. BLASER, a Disabled Adult, Respondent.

*Order filed June 12, 1997.*

*Opinion on petition for rehearing filed February 19, 1998.*

*Supplemental opinion filed September 23, 1998.*

KATZ, MCHARD, BALCH, LEFSTEIN & FIEWEGER (LORI LEFSTEIN, of counsel), for Claimant.

JIM RYAN, Attorney General (EDWIN DURHAM, Assistant Attorney General, of counsel), for Respondent.

## ORDER

Epstein, J.

This claim is before the Court on the Respondent's motion to dismiss per section 2—619 and section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—619, 2—615) which raise both jurisdictional and substantive issues, and which have been fully briefed and orally argued to the full Court.

### The Facts

The Claimant, Reynolds State Bank (the "Bank"), was the depository of funds of a testamentary trust that had been created, in 1959, by the will of the late Albert Blaser, for the benefit of his son, Glenn A. Blaser during his lifetime, with the remainder interest in Glenn Blaser's descendants. (Complaint, pars. 3-5.) The initial trustee died; on December 29, 1992, Patsy Ann Stone, a daughter of Glenn A. Blaser, was appointed as successor trustee. (*Id.*, pars. 5, 10.)

On December 15, 1989, the Circuit Court (Rock Island County) appointed the Office of the State Guardian ("OSG") as plenary guardian of the estate of Glenn Blaser, a disabled adult, and issued letters of office to the OSG. (*Id.*, par. 6.) On January 2, 1990, the OSG sent a

demand letter to the Bank requesting it to deliver to the OSG "the balance in account nos. 3860 and 3916 (certificates of deposit)" and directed that the Bank's check "should be made payable to the [OSG] for Glen [sic] Blaser * * *." The OSG's letter enclosed copies of its letters of guardianship from the Circuit Court. (*Id.*, par. 7, exhibit 3.)

The Bank sent the OSG a certified check for $44,266.07 "representing the balance of two certificates of deposit and a savings account." (*Id.*, par. 8.) The Bank alleges that it made the payment "in good faith and on reasonable belief that the OSG had Court-approved authority to collect these funds." *Ibid.*

### Procedural History of this Litigation

In 1993, Patsy Ann Stone, as successor trustee of the Blaser Trust, sued the Bank in the Circuit Court (Rock Island County) seeking restitution of the funds from the Bank and the OSG. The Bank filed a "counterclaim" for indemnification against the OSG.

The Circuit Court entered summary judgment against the Bank and the OSG for $27,874.42, and entered summary judgment for the Bank against the OSG for $27,874.42 on the Bank's "counterclaim." The successor trustee received satisfaction of the judgment.

The OSG appealed on the basis of sovereign immunity. The Appellate Court, Third District, in an unpublished order, reversed and vacated the judgment against the OSG, holding:

"In the matter *sub judice*, the Bank, by its counter-claim, sought and received a money judgment against the OSG. The OSG, a division of the Guardianship and Advocacy Commission, is an executive agency of state government created by the legislature. See section 3 of the Guardianship and Advocacy Act. (20 ILCS 3955/3 (West 1994)). Thus, claims against the OSG subjecting the State to potential liability fall within the exclusive jurisdiction

of the Court of Claims. *Noorman v. Department of Public Works* (1937), 366 Ill. 216."[1]

> *Stone v. Office of the State Guardian and Reynolds State Bank*, No. 3-95-0451 (Order) (Ill. App. Ct., 3d Dist.), at 4.

The Appellate Court also rejected the Bank's contention that the OSG like "any individual or corporation serving as a guardian under * * * the Probate Act * * * must answer to the Circuit Court for any alleged wrongdoing." (App. Ct. Order, at 4-5.)[2]

Following the Appellate Court's reversal of the judgment against the OSG and that Court's denial of the Bank's petition for rehearing, the Bank filed its complaint in this Court against the OSG, still contending "that this Court [of Claims] does not have exclusive jurisdiction to hear and determine this claim" but nevertheless filing it "because the Appellate Court has held otherwise," but noting that it was seeking review by the Supreme Court. (See complaint, par. 18.)

## The Claims Advanced

In this Court, the Bank's complaint did not articulate a legal theory of recovery. In the briefs on the motions to dismiss, Claimant asserted implied contractual indemnification theories which appear to be based, at least arguably, on both legal and equitable grounds, but which are not supported by any express contract between the Claimant and the OSG, as the Respondent so emphatically points out. At oral argument, Claimant articulated a conversion theory, as imbedded in the complaint.

Respondent urges that this Court lacks subject matter jurisdiction over equitable claims, and alternatively, that

---

[1] Also citing *Smith v. Jones* (1986), 113 Ill. 2d 126, *Currie v. Lao* (1992), 148 Ill. 2d 151, *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387, and *S.J. Groves & Sons, Co. v. State* (1982), 93 Ill. 2d 397.

[2] The Appellate Court also rejected the Bank's contention that the Guardianship and Advocacy Act (20 ILCS 3955/1 *et seq.*) contained an implied waiver of sovereign immunity as to the OSG. (App. Ct. Order, at 4.)

we lack jurisdiction to entertain any implied contract claims. Respondent separately contends that this action is barred by the jurisdictional limitations provisions of our Act. Finally, and substantively, Respondent argues that the complaint fails to state a legal or equitable claim for implied indemnity under any legal or equitable action recognized in Illinois.

## Opinion

In this Court and seemingly in the Appellate Court, this case has become somewhat confused. This Court entertained this claim—through briefing and oral argument on the pending motions—as a claim against a State agency, asserting liability of the OSG in that capacity. Thus considered, and particularly in light of the liability arguments advanced in the Claimant's briefs, this claim is a claim against the State that properly belongs in this Court under our exclusive jurisdiction under section 8 of the Court of Claims Act. 705 ILCS 505/8.

On closer scrutiny, however, this is not such a claim. As seemingly was also the posture in the Circuit and Appellate courts, the Bank has sued the OSG in this Court "as Guardian of the Estate of Glenn A. Blaser, a Disabled Adult." So read all of the captions of all of the pleadings that we have seen in all three Courts in which this dispute has been entertained. In this Court, not only is the caption so designated, but the text of the Bank's complaint names the OSG solely in its Circuit Court-appointed capacity as guardian of the estate of Glenn A. Blaser.

As embarrassing as this belated discovery may now be to all concerned, including this Court, that limitation is jurisdictionally dispositive. This is not a claim against the OSG, individually, in its capacity as a State agency. This is a claim against the estate of Glenn A. Blaser. This is how it is pleaded. This is how it will be considered. Despite

our erroneous indulgence in the supplemental argumentation of the parties (which is at best ambiguous as to the status of the Respondent OSG), and in light of the absence of any allegation of tortious conduct or breach of express contract by the State in this complaint, we will not *sua sponte* expand the Claimant's complaint beyond its own terms.[3]

As a claim against the estate of a private individual, this claim falls outside of the jurisdiction of this Court. As we have held in other cases where State officers or agencies are sued in private fiduciary capacities, this Court lacks subject matter jurisdiction over the underlying private estate:

"As a claim against a probate estate, this claim is outside the jurisdiction of this court as prescribed by section 8 of the Court of Claims Act (735 ILCS 505/8)."

*Kulas v. Vogler* (1997), 49 Ill. Ct. Cl. 172 at 173.

Because this claim must be dismissed for want of subject matter jurisdiction, we need not, and do not, address the other jurisdictional and substantive issues urged by the parties.

This claim is dismissed for lack of subject matter jurisdiction over the estate of Glenn A. Blaser, and over the Office of State Guardian as guardian of that estate.

## OPINION

EPSTEIN, J.

This case returns on motions following its dismissal for want of jurisdiction over the original claims against the Office of the State Guardian ("OSG") in its representative capacity as Court-appointed guardian of an individual's estate. We held, and the parties do not now dispute, that this Court lacks jurisdiction over a claim against a

---

[3] We recognize that the complaint inferentially seeks recovery from OSG funds (i.e., State funds): the complaint alleges (par. 12) that the remaining $31,389.31 of funds of the Blaser Trust that the OSG held were returned to the trustee during the Circuit Court litigation.

private estate and its private funds. (order of June 12, 1997.) That order sets forth the essential facts as alleged.

Claimant now asks us to reconsider the dismissal and to permit it to file its two-count amended complaint that names the OSG in its personal capacity as a State agency and thus claims against the State. The Respondent asks us to dismiss the amended complaint on various jurisdictional and substantive grounds. In response to our order (September 5, 1997), the parties each briefed some, but not all, of the issues spawned by the four motions now before us:

(1) Claimant's petition for rehearing, which contends that dismissal of the original claim was an improper remedy under section 2—401(b) of the Code of Civil Procedure (735 ILCS 5/2—401(b)) for the "misnomer" of the OSG in its capacity as the "Guardian of the Estate of Glenn A. Blaser * * *," rather than in its "intended" capacity as a State agency;

(2) Claimant's motion under section 2—401 and section 2—616 of the Code of Civil Procedure (735 ILCS 5/2—401, 2—616) for leave to file an amended complaint against the OSG in its personal capacity as a State agency;

(3) Respondent's section 2—615 motion of the Code of Civil Procedure (735 ILCS 5/2—615) to dismiss the amended count I for failure to state an implied indemnity action based on tort, and to dismiss the amended count II for lack of jurisdiction over an implied indemnity claim based on equitable quasi-contract; and

(4) Respondent's section 2—619 motion of the Code of Civil Procedure (735 ILCS 5/2—619) to

dismiss the amended complaint as barred by the two-year limitation of section 22(g) of the Court of Claims Act (705 ILCS 505/22(g)); which is jurisdictional (*id.* section 22(h)).

## The Petition for Rehearing

Claimant asks us to reconsider the dismissal order on the basis of section 2—401(b) of the Code of Civil Procedure (750 ILCS 2/2—401(b)), which precludes dismissal as a remedy for a misnomer. Claimant characterizes its initial pleading against the OSG as a misnomer, saying that it intended to name the OSG personally and that its naming the OSG in its guardian capacity was inadvertent.

We accept Claimant's representation of inadvertency, but reject its argument that section 2—401(b) precludes dismissal of a mispleaded claim that, as pleaded, lies beyond the Court's jurisdiction. The pleader's intent is immaterial to jurisdiction; and lack of jurisdiction is dispositive. Claimant cites no authority that dismissal is improper where the Court lacked subject matter jurisdiction over a mispleaded dismissed claim.

However, we have also concluded that the jurisdictional dismissal of the original claim does not preclude further proceedings in this Court on an amended or new claim over which the Court does have jurisdiction. This Court will treat a later claim against a substantively distinct Respondent as a new claim, whether filed in a new or an amended complaint. In this circumstance at least, and in this Court at least, the dismissal issue is a hypertechnicality.

Although this Court, by rule, has adopted the Administrative Code to govern our proceedings generally (74 Ill. Admin. Code 790.20), procedures in this Court are nonetheless subordinate to the requirements and limitations of

the Court of Claims Act, particularly the jurisdiction provisions of section 8 (705 ILCS 505/8). As this case demonstrates, the interplay between this Court's jurisdictional constraints—unique in Illinois—and the mixture of State and non-State capacities in which some "State agencies" operate, can create a trap for unwary litigants. But sympathy and empathy do not permit us to expand our narrow statutory jurisdiction. We reject Claimant's section 2—401 argument, and deny the petition for rehearing.

## Leave to Amend

Claimant's motion for leave to amend to name the OSG in its personal capacity relies on both the misnomer cure provisions of section 2—402 and the general amendment provisions of section 2—616 of the Court of Claims Act (705 ILCS 505/2—402, 505/2—616). The Respondent has interposed no objection to amendment, and has not suggested any resulting prejudice to the State.

In this context, and because we agree with the Claimant that the State had timely notice of the underlying claim which, though technically a different action in the amended complaint than in the original one, arises from the same transactions, we will allow amendment under section 2—616 and need not address section 2—402. Claimant's amended complaint will be filed *instanter*.

## The Motion to Dismiss Amended Count I
### Failure to State a Tort-Based Implied Indemnity Action

Respondent attacks the count I implied indemnity claim for failure to state a cause of action on the arguments: (1) that tort-based implied indemnity actions lie only for derivative tort liability in Illinois, since the enactment of the Contribution Act, and that such derivative liability requires an antecedent (*i.e.*, pre-tort) relationship between the indemnitee (the plaintiff who suffered a loss

by derivative liability) and the indemnitor (the tortfeasor-defendant who generated the liability), citing *Zielinski v. Miller* (3d Dist. 1996), 277 Ill. App. 3d 735, 660 N.E.2d 1289; *Coleman v. Franklin Boulevard Hosp.* (1st Dist. 1997), 227 Ill. App. 3d 904, 592 N.E.2d 327; and *People v. Community Hospital of Evanston* (1st Dist. 1989), 189 Ill. App. 3d 206, 545 N.E.2d 226; and (2) that there is no allegation in the amended complaint of a pre-tort relationship between the Claimant Bank and the Respondent OSG.

The Claimant concedes the requirement of a supporting pre-tort relationship between the parties. (reply to response to petition for rehearing and motion to dismiss, 3-4.) Claimant seeks to meet this requirement with the argument (*id.*, at 4) that

"the obvious pre-tort relationship which [the Claimant] RSB had with [the] OSG was that of being the predecessor fiduciary which transferred funds in good faith to [the] OSG pursuant to OSG's demand and apparent Probate Court order."

Claimant argues that this "predecessor fiduciary" status also provides a predicate of tort liability for the "misconduct, * * * [of the] OSG's * * * acts * * * in improperly spending the trust funds which had been entrusted to it by its predecessor fiduciary" *ibid.*

Initially, we observe that both parties miscategorized the legal theory of the amended count I, which is predicated upon a surviving aspect of the common law implied indemnity doctrine in Illinois that allows indemnity recovery in derivative liability situations. However, that surviving aspect is part of the quasi-contract wing of the implied indemnity doctrine, rather than the tort wing of the doctrine, as Claimant contends and as Respondent seems to assume. The tort wing of implied indemnity was based on the relative blameworthiness of tortfeasors. That wing of the doctrine was judicially abolished in Illinois following

the enactment of the Contribution Act. *American National Bank and Trust Co. v. Columbus-Cunero-Cabrini Medical Center* (1993), 154 Ill. 2d 347, 609 N.E.2d 285, 288-289, 181 Ill. Dec. 917, 920-921:

"\* \* \* In short, in view of the scope of the Contribution Act, reason to support implied indemnity based on tort principles of relative blameworthiness has ceased to exist.

However, the theory supporting implied indemnity in a quasi-contractual context is supported by a fundamentally different premise. [citation omitted.] That premise recognizes that the law may impose upon a blameless party liability derivatively through another's conduct. [citation omitted.] Thus \* \* \* reasons may exist to continue to recognize the viability of implied indemnity where a principal is vicariously liable for the conduct of an agent or for the nondelegable acts of an independent contractor. [citations omitted.]

\* \* \*

\* \* \* We therefore hold that common law implied indemnity was not abolished by the Contribution Act in quasi-contractual relationships involving vicarious liability."

It is therefore apparent that the amended count I cannot, and does not, state a cause of action as a tort based implied indemnity action.

If we are to treat the amended count I pleading liberally, disregard its erroneous characterization by its pleader, and consider it as an implied indemnity claim based on quasi-contract (as applied to derivative tort liability), count I must first pass the jurisdictional hurdle raised by Respondent as to count II of the amended complaint. Because count I as well as count II of the amended complaint are quasi-contract-based implied indemnity claims, Claimant's jurisdictional attack is equally applicable to both counts.

### The Motion to Dismiss Amended Counts [I and] II—Jurisdiction

Respondent attacks the jurisdiction of this Court over the count II implied indemnity claim (and necessarily, as stated above, over the amended count I claim) because of the equitable [quasi-contract] basis of those claims and the oft-stated lack of "equity jurisdiction" of this Court.

The law-equity distinction, which derives historically from the separate development of the Law Courts and the chancery powers in England, has continuing vitality for a number of purposes in American law (particularly the right to a jury trial, *see, e.g., Martin v. Heinhold Commodities, Inc.* (1994), 163 Ill. 2d 33, 643 N.E.2d). The differences between law and equity, however, involve both their respective remedial powers as well as the underlying rights to relief (i.e., causes of action) at law and in chancery. Application of the law-chancery distinction to the statutory jurisdiction of this Court, therefore, is not always as straightforward as it is in this case.[1]

In this case, there is a short answer to the Respondent's challenge to this Court's jurisdiction over quasi-contract-based implied indemnity claims. As the Claimant correctly points out, our Supreme Court has held that the common law implied indemnity action, including both the tort wing and the quasi-contract wing, is itself a tort. *Maxfield v. Simmons* (1993), 96 Ill. 2d 81, 449 N.E.2d 110, 70 Ill. Dec. 236; *Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1st Dist. 1984), 123 Ill. App. 3d 947, 463 N.E.2d 913, 79 Ill. Dec. 359; *Garcia v. Edgewater Hospital* (1st Dist. 1993), 244 Ill. App. 3d 894, 613 N.E.2d 1243, 184 Ill. Dec. 651.

It is thus settled in Illinois that implied indemnity actions are torts even when predicated on equitable quasi-contract principles. Accordingly, the amended counts I and II, which sound in implied indemnity, fall within our tort jurisdiction under section 8(d) of the Court of Claims

---

[1] Although this Court has firmly held that we lack equitable *powers*—i.e., the Illinois Court of Claims has not been vested with statutory jurisdiction to grant equitable *remedies*—in *Garimella v. University of Illinois* (1997), 50 Ill. Ct. Cl. 350, there is an arguably open issue of our adjudicatory jurisdiction to entertain equitable *actions* recognized by Illinois law where such equitable grounds lead·to one or more of the remedies that this Court is empowered to grant, at least where the underlying equitable action falls within our statutory jurisdiction set forth in section 8 of the Court of Claims Act. (735 ILCS 505/8.) (*See, Garimella, supra*, Epstein, J., concurring.)

Act (705 ILCS 505/8(d)). Respondent's motion to dismiss the amended count II for want of jurisdiction, taken as a motion to dismiss the entire amended complaint for want of jurisdiction, is denied.

The Motion to Dismiss Amended Count I
Failure to State a Quasi-Contract-Based
Implied Indemnity Action

Reverting to the interrupted analysis of the amended count I, and treating it liberally as an implied indemnity claim based on quasi-contract and derivative liability, the amended count I still fails to state a cause of action for several reasons.

First, the amended count I does not allege a pre-existing relationship in fact or in law between the Claimant bank and the Respondent OSG. The "successor fiduciary" relationship that is now advanced by the Claimant is unsupported by the factual allegations in the complaint and, indeed, is contrary to the Claimant's allegations. The amended complaint alleges that the Claimant bank was the depository of the funds of the Blaser Trust, and that the OSG was appointed as guardian of one of the beneficiaries (the life income beneficiary) of that trust. Those are hardly the same or "successor" fiduciary positions.

Second, the liability of the Claimant bank that was imposed by the Circuit Court and affirmed by the Appellate Court, for which the Claimant now seeks indemnity from the OSG, was not predicated upon a derivative liability and, seemingly, could not have been.

Having reviewed the Appellate Court's order, the Circuit Court's judgment order, and the pleadings and briefs in the prior litigation, we cannot find any basis for the arguments now advanced in this Court that the Claimant bank's liability to the Trust resulted from a derivative

liability or from a "successor fiduciary" liability, or that the liability imposed by those Courts was predicated on the OSG's "improperly spending" the funds that the Claimant bank had erroneously released to the OSG. Moreover, the fiduciary roles of the Claimant and the OSG that are alleged in the complaint—depositary of trust funds (Claimant) and guardian of life income beneficiary of trust (Respondent)—would not support derivative liability on the Claimant bank for the trust's loss, for which it was held liable.

## The Statute of Limitations

The Respondent's limitations attack on the amended complaint—of which only count II now remains for consideration—is based upon the residual two-year limitation of section 22(g) of the Court of Claims Act (705 ILCS 505/22(g)). The Claimant defends the viability of its implied indemnity claim(s) on the basis of when its actions for indemnity first accrued. Based on settled Illinois case law, Claimant argues that its indemnity actions could not accrue prior to the date of its payment or of a judgment against it for which Claimant seeks indemnity, and that therefore its indemnity claims fall within the two-year limitations period.

Neither party, however, has cited or addressed the recent (1994) statutory change in the statute of limitations for contribution and indemnity: section 13—204 of the Code of Civil Procedure (735 ILCS 5/13—204) as amended by P.A. 88—538, section 5, approved and effective March 14, 1994.

The recently amended statute, which is arguably applicable here, provides a two-year limitation period for contribution and indemnity actions, which is, to that extent, identical to the period prescribed by section 22(g) of the Court of Claims Act (705 ILCS 505/22(g)) which is

advanced by the Respondent in its motion. However, the new limitations statute also provides as follows:

"§13—204. Contribution and indemnity.

\* \* \*

(b) In instances where an underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later.

(c) The applicable limitations period contained in subsection (a) or (b) shall apply to all actions for contribution or indemnity and shall preempt, as to contribution and indemnity actions only, all other statutes of limitation or repose, but only to the extent that the claimant is an underlying action could have timely sued the party from whom contribution or indemnity is sought at the time such claimant filed the underlying action, or in instances where no underlying action has been filed, the payment in discharge of the obligation of the party seeking contribution or indemnity is made before any such underlying action could have been barred by lapse of time.

(d) The provisions of this amendatory Act of 1993 shall be applied retroactively when substantively applicable, including all pending actions without regard to when the cause of action accrued; provided, however, that this amendatory Act of 1994 shall not operate to affect statutory limitations or repose rights of any party which have fully vested prior to its effective date."

This Court is reluctant to consider this amended limitations statute and its potential application to this case in the absence of an opportunity for the parties to address the issues involved. We will defer consideration of the limitations issue in this case and will direct the parties to submit supplemental briefs on this issue only.

We request the parties to address, *inter alia*, the amended section 13—204's applicability to this case, its relation to and "preemptive" effect, if any, on the Court of Claims Act, and the retroactivity provision of section 13—204(d). We further request the parties to address the decision in *Ganci v. Blauvelt* (4th Dist., January 22, 1998), 294 Ill. App. 3d 508, 690 N.E.2d 649, and any other reviewing Court decisions addressing the amended section 13—204.

## Order

For the reasons set forth above, it is hereby ordered:

(1) Claimant's petition for rehearing is denied; and

(2) Claimant's motion for leave to amend is granted; and Claimant is granted leave to file its amended complaint *instanter*; and

(3) Respondent's motion to dismiss count I of the amended complaint for failure to state a cause of action is granted; and count I of the amended complaint is dismissed; and

(4) Respondent's motion to dismiss count II of the amended complaint for want of jurisdiction, taken as a motion to dismiss counts I and II of the amended complaint for want of jurisdiction, is denied; and

(5) Respondent's motion to dismiss count II of the amended complaint as barred by the statute of limitations is continued to the conclusion of the supplemental briefing schedule set forth below; and

(6) The parties are each directed to file, simultaneously, a supplemental brief on the application of section 13—204 of the Code of Civil Procedure (735 ILCS 5/13—204) as now amended, to this claim not later than March 20, 1998; and

The parties may each file a supplemental reply brief on the section 13—204 limitations issues no later than 28 days after the opposing party has filed its supplemental brief.

## SUPPLEMENTAL OPINION

EPSTEIN, J.

This case is again before us on the last piece of the Respondent's motion to dismiss Claimant's amended

complaint. That remaining issue is whether or not count II of the amended complaint, sounding in the tort of implied quasi-contractual indemnity, is barred by the two-year limitation of section 22 of the Court of Claims Act (705 ILCS 505/22) or by the retroactive two-year limitation of section 13—204 of the Code of Civil Procedure (735 ILCS 5/13—204, as amended by Public Act 88-538 (1994), effective January 1, 1995, retroactive as provided in section 13—204(d)). The essential facts, as pleaded, are set forth in our order of June 12, 1997.

We directed supplemental briefs on the limitations issue in light of the retroactive 1994 amendment of section 13—204 and the decision in *Ganci v. Blauvelt* (4th Dist. 1998), 294 Ill. App. 3d 508, 690 N.E.2d 649, 228 Ill. Dec. 890, which construed the amended section 13—204(d).

### The Issue Presented

The dispositive issue is whether or not the amended section 13—204 applies to this claim. The resolution of that issue turns on the interpretation of the "retroactivity" and "savings" clauses of paragraph (d) of section 13—204 (as amended by P.A. 88-538), and their application to the instant facts. As amended in 1994, section 13—204 set a two-year limitation period for all contribution and indemnity actions in Illinois, and in relevant part provides as follows:

"§13—204. Contribution and indemnity.

\* \* \*

(b) \* \* \* where any underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later.

(c) The \* \* \* limitations \* \* \* contained in subsection (a) or (b) shall apply to all actions for contribution or indemnity and shall preempt, as to contribution and indemnity actions only, all other statutes of limitation or repose,

but only to the extent that the claimant in an underlying action could have timely sued the party from whom contribution or indemnity is sought at the time such claimant filed the underlying action, or * * * where no underlying action has been filed, the payment * * * of the party seeking contribution or indemnity is made before any such underlying action would have been barred by lapse of time.

(d) The provisions of this amendatory Act of 1993 shall be applied retroactively when substantively applicable, including all pending actions without regard to when the cause of action accrued; provided, however, that this amendatory Act of 1994 shall not operate to affect statutory limitations or repose rights of any party which have fully vested prior to its effective date."

## The Parties' Positions

In an inversion of the usual posture of parties contesting a statute of limitation, the Respondent—seeking to bar the claim—urges a *late* (post-amendment) date for the accrual of Claimant's indemnity claim, while the Claimant—seeking to maintain the claim—urges an *early* (pre-amendment) accrual of its indemnity claim. The argument is whether application of the amended section 13—204 to this claim would be a retroactive application, and whether section 13—204(d) mandates that retroactive application.

There is no debate about how the amended section 13—204 applies to this claim, if it applies. Respondent contends (1) that the two-year limitation of section 13—204(b), rather than section 13—204(a), is applicable because "an underlying action [was] filed" against the Claimant that now asserts indemnity; (2) that the two-year limitation period of section 13—204(b) commenced running by March, 1993, when the Claimant bank was served in the underlying lawsuit (by the Blaser Trust) that generated the liability for which indemnity is now sought from the OSG; and (3) that therefore, the limitation period expired in March, 1995, well before the August 29, 1996, filing of the instant complaint, which is thus barred. Claimant does not challenge that analysis.

350

Claimant seeks to avoid retroactive application of the amended statute under the "savings clause" of section 13—204(d) and the holding in *Ganci v. Blauvelt* (4th Dist. 1998), 294 Ill. App. 3d 508, 690 N.E.2d 649, 228 Ill. Dec. 890 (hereinafter *Ganci*), which refused to give retroactive effect to section 13—204 because of the protection of "statutory limitations or repose rights of any party which have fully vested" (section 13—204(d) ["savings clause]). *Ganci* reasoned as follows:

"Thus, section 13—204 purports to have retroactive effect, but it does "not operate to affect statutory limitations or repose rights of any party which have fully vested prior to its effective date." 735 ILCS 5/13—204(d) (West 1996). * * *

However, we cannot disregard * * * 13—204(d) * * *. Ordinarily, limitations or repose rights are those exercised by a party defendant * * * to protect that party from a stale claim, but * * * 13—204(d) refers to those rights of 'any party,' which would include those possessing a cause of action, as well as those who seek to defend against an action. Moreover, the language concerning the protection of vested rights would have little significance if it referred only to defendants because the amendment cuts down the time plaintiffs have for bringing suits * * * and, therefore, could not injure the rights of defendants.

No case has been called to our attention that holds that a party having a cause of action has a vested right in that cause of action. * * * The undisputed vested rights of parties from suits after statutory periods of limitation have expired have been equated with the rights of parties to bring suits. *Wilson v. All-Steel, Inc.*, 87 Ill. 2d 28, 41, 428 N.E.2d 489, 494 (1981); *Board of Education of Normal School District v. Blodgett*, 155 Ill. 441, 449, 40 N.E. 1025, 1027 (1895). In a dissent * * * [of] the Supreme Court of Illinois, the statement was made that an accrued cause of action is a vested right. *Sanelli v. Glenview State Bank*, 108 Ill. 2d 1, 46, 483 N.E.2d 226, 247 (1985) [dissenting opinion].

In view of the foregoing * * * authoritative opinions and the express reference in * * * 13—204(d) to the vested 'rights of any party,' we conclude the General Assembly sought to protect the rights of parties seeking contribution under the time limits previously in existence if the cause of action for contribution accrued prior to the amendment. We are troubled by the fact that our interpretation renders meaningless the provision of * * * 13—204(d) indicating that subsection applied retroactively. Retroactive application of new legislation concerning limitations and repose and retention of vested rights under the prior legislation involving the same matters are inherently inconsistent.

In any event, statutes are presumed to have only a prospective application, and the presumption is overcome only by clear language * * * [citations omitted]. * * * 13—204(d) clearly states the section is to have retroactive effect, but the required clarity is destroyed by the language * * * 'shall not operate to affect statutory limitations or repose rights of any party.' [Cite omitted.]"

The Respondent, in turn, contends (1) that section 13—204 applies to this case *without* retroactive application, because this indemnity claim did not accrue until after the effective date of the section 13—204 amendment when the Claimant paid the liability for which indemnity is sought, and that therefore *Ganci* is inapplicable; and (2) that the *Ganci* holding directly conflicts with the language of section 13—204(d) which mandates retroactive effect to "all pending actions without regard to when the action accrued * * *."

The Claimant replies by pointing out that Illinois contribution and indemnity actions, unlike most other causes of action, accrue for purposes of allowing actions to be brought and usually for limitations purposes *before* actual damages are suffered by way of payments made or judgments imposed, citing *Highland v. Bracken* (4th Dist. 1990), 202 Ill. App. 3d 625, 148 Ill. Dec. 104, 106-107, 560 N.E.2d 406; *Bonfield v. Jordan* (4th Dist. 1990), 202 Ill. App. 3d 638, 148 Ill. Dec. 110, 560 N.E.2d 412; and *Hahn v. Norfolk & Western Railroad Co.* (5th Dist. 1993), 241 Ill. App. 3d 97, 181 Ill. Dec. 610, 608 N.E.2d 683. The opinion (for contribution actions) in *Highland v. Bracken, supra,* is instructive:

"The * * * issue * * * is whether the cause of action for contribution 'accrues' for purpose of triggering the statute of limitations, at the time of injury, or whether it remains inchoate until the occurrence of certain other events. *Black's Law Dictionary* defines 'accrue' as to vest or to mature * * *.' A cause of action accrues when facts exist which authorize one party to maintain an action against another.' (*Meeker v. Summers* (1979), 70 Ill. App. 3d 528, 529, 26 Ill. Dec. 919, 920, 388 N.E.2d 920, 921.)

A contribution action lies, for example, when (1) a payment is incurred or made in whole or in part on a common obligation, or something is done in the equivalent, so that this payment made by the joint obligor is in excess of his share of the common obligation * * * or (2) the party bringing the contribution action is sued by a complaining party, giving him notice of the nature and the potential amount of the obligation necessitating the contribution action * * *.

Therefore, * * * while this right of contribution exists from the time of injury, it exists in inchoate form, and does not ripen, mature, vest, or accrue,

until either payment is made * * * or an action is brought against the defendant. * * *"

Thus Claimant contends, with some irony, that its cause of action against the OSG accrued in March, 1993, well before the January 1, 1995, effective date of the new statute, making any application of the amended section 13—204 to this case retroactive.

## Analysis

Four points are clear (and undisputed) on this convoluted statute of limitations issue:

(1) the amended section 13—204 is now the Illinois law of limitations for contribution and indemnity actions and must be addressed first;

(2) under the express terms of section 13—204(c), the limitation of section 13—204 "preempt[s] * * * all other statutes of limitations or repose" for contribution and indemnity actions, and therefore supersede[s] the two-year limitation of section 22(g) of the Court of Claims Act (705 ILCS 505/22(g)), if the amended section 13—204 is applicable;

(3) section 13—204 now mandates retroactive application, subject only to the "savings clause" in section 13—204(d); and

(4) the precise meaning of the retroactivity and savings clauses of section 13—204(d), particularly the term "fully vested" and its relationship to "accrued," are ambiguous at a minimum and may be, as *Ganci* said, "inherently inconsistent."

We must therefore determine the meaning of the facially unclear and arguably conflicting language of section 13—204(d)—unless we accept Respondent's argument that the application of section 13—204(b) to this indemnity

claim is a prospective rather than retroactive application. However, this Court does not accept that view. We conclude that the Claimant is correct that its indemnity claim accrued before the January 1, 1995, effective date of the amendment under the law then applicable. Application of section 13—204 to this accrued claim is therefore a retroactive application.[1]

Before turning to the section 13—204(d) language, we note that a 1st District decision—in addition to the 4th District decision in *Ganci, supra*—has applied section 13—204(d) to deny retroactive effect. *Lin v. City of Chicago* (1st Dist. 1995), 276 Ill. App. 3d 13, 212 Ill. Dec. 313, 657 N.E.2d 8, held that the right of a third-party plaintiff (a defendant in the underlying tort case) to bring a contribution action had become "fully vested" before the effective date of the new section 13—204 and was thus protected from its retroactive application by section 13—204(d). However, *Lin* did not explain how that right had become "fully vested," and did not even discuss the point.

The sole Illinois precedents are, unhappily, less than dispositive of the issue. The *Lin* opinion provides no interpretative guidance, as noted above. The *Ganci* opinion was clearly troubling to that Court and is to this Court. Three aspects are noted here:

---

[1] Under the pre-1995 law, section 13—204 applied only to *contribution* actions between joint tortfeasors (and that limitation commenced to run only upon actual payment of an excess share of a joint liability). This claim was not governed by the former section 13—204.

Moreover, under pre-1995 law, there was no single limitation for contribution and indemnity actions. Illinois Courts commonly held that the limitation for contribution and indemnity actions followed (derivatively) the limitation that was applicable to the underlying action that gave rise to the particular contribution or indemnity claim; thus the limitation period varied from case to case. *See, e.g., Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450 (applying four-year medical malpractice repose period); *Vogt v. Corbett* (1990), 138 Ill. 2d 482, 563 N.E.2d 447 (applying *Hayes* to one-year limitation of Local Government and Governmental Employees Tort Immunity Act).

In this Court, before the amended section 13—204 took effect, contribution and indemnity claims were subject to the two-year limitation of section 22(g) of the Court of Claims Act (705 ILCS 505/22(g)) unless a shorter statute otherwise applied.

First, on the basis of a perceived "inconsisten[cy]" in the statutory language, *Ganci* nullified ("renders meaningless") a concededly clear legislative mandate of retroactivity. *Ganci* did so by construing the section 13—204(d) savings clause so broadly as to eviscerate the retroactivity clause in the same sentence. We believe that the duty of this Court is to give effect, if possible and as much as possible, to all of the statutory words and phrases enacted by the legislature—especially when the competing language was simultaneously enacted in a single legislative act.

Second, as Respondent urges, *Ganci's* holding, which insulates all pre-1995 "accrued" indemnity claims from application of section 13—204, flies directly in the face of the unambiguous mandate that section 13—204 *"shall* be applied retroactively * * * [to] all pending actions *without regard to when the cause of action accrued * * *."* (735 ILCS 5/13—204(d), emphasis added.) We do not believe the *Ganci* construction is permissible.

Third, having found the statute unclear and internally conflicting, the *Ganci* Court mysteriously did not seek to resolve that interpretative dilemma by looking to the legislative history for some hint of legislative intent.

*Ganci,* however, aptly observed that the savings clause is a limitation on the retroactivity clause, and that there is a tension between the two clauses of section 13—204(d). We agree, but focus on the ambiguity of the key terms in these clauses. The problems in section 13—204(d) arises from (1) the phrase "statutory *limitations or repose rights* of *any party* which have *fully vested*" in the savings clause, and (2) the term *"accrued"* in the retroactivity clause (emphases added).

As *Ganci* noted, the term "vested" as applied to "limitations or repose rights" is not an established term of art.

The notion of "vested limitations rights," standing alone, seems to denote *defendants'* right not to be sued after expiration of a statute of limitations. Our Supreme Court has held that expiration of a statute of limitations creates a vested right in a prospective defendant to be free of suit, *City of Chicago v. Collin* (1992), 302 Ill. 270, 274, 134 N.E. 751; *Sepmeyer v. Holman* (1994), 162 Ill. 2d 249, 205 Ill. Dec. 125, 642 N.E.2d 1242; *see First of America Trust Co.* (1996), 171 Ill. 2d 282, 215 Ill. Dec. 639, 664 N.E.2d 36. As noted in *Ganci, supra*, a statute of limitation or repose grants rights only to defendants, and only *limits* plaintiffs' rights. Still, some Courts have occasionally referred to plaintiffs' rights as "vested," *e.g.,* the *Lin* decision, *supra*. In the final analysis, there is no inherent reason why "vested limitations rights" may not refer to plaintiffs' rights as well as defendants' rights. We find the phrase "vested * * * limitations or repose * * * rights," as used in section 13—204(d), to be ambiguous.

We also agree with *Ganci* that the phrase "any party" in section 13—204(d) suggests that the "vested limitations or repose rights" phrase applies to plaintiffs as well as defendants. However, the words "any party" do not lead to any particular construction of the savings clause.[2]

In our view, the ultimate tension between the two component clauses of section 13—204(d) boils down to the simultaneous use of "accrued" in the retroactivity clause and "fully vested" in the savings clause. There is no

---

[2] We also observe that *Ganci's* treatment of section 13—204 as a categorical *shortening* of the prior limitation periods for contribution and indemnity claims—thus affecting only plaintiffs' rights—is incorrect. Because section 13—204 adopted a uniform two-year limitation period to replace the former variable limitation for contribution and indemnity actions, the impact of the new section 13—204 may be to shorten *or lengthen* the prior limitation. Pre-1995 Illinois law applied a derivative limitation (adopting the limitation applicable to the underlying tort claim), which could vary from one year, *e.g.*, in some actions against local governments, to five or more. *See, Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450; *Vogt v. Corbett* (1990), 138 Ill. 2d 482, 563 N.E.2d 447. "Vested rights" in section 13—204(d) thus appears somehow to apply to both plaintiffs and defendants.

clear settled meaning for these terms, either in plain meaning terms or as terms of art, that can reconcile the two clauses. The seeming conflict is exacerbated by the fact that "accrued" and "vested" are sometimes used in the case law to mean the same thing.

We can only conclude that the legislative intent was—clearly—to mean *something different* by the two expressions when simultaneously enacted in a single legislative act in a single statutory sentence addressing one subject. However, having concluded that "fully vested" must be read to mean more than "accrued," it remains unclear on the face of the statute just what that difference was intended to be. With the statute exhaustively unclear on its face, it is incumbent on the Court to examine the legislative history for a clue to the intent.

### The Legislative History of Section 13—204

It turns out that the legislative history of the "retroactivity" and "savings" clauses of section 13—204(d) as enacted in P.A. 88-538 is straightforward if somewhat lengthy, as it involves two annual sessions of the General Assembly.

The legislative history, however, originates in our Supreme Court, following its divided 4-3 decision in *Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, which applied the derivative limitation to a contribution claim in a medical malpractice lawsuit. In its 1991 Annual Report, the Court recommended to the General Assembly that the statute of limitations for contribution actions should be revised. The Court stated as follows:

"In *Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, our Court ruled that an action for contribution must be filed within the four year time limit specified in section 13—212 of the Code of Civil Procedure (735 ILCS 5/13—212(a).) The dissenting opinions (*Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, 471 (Clark, J. dissenting), 473 (Calvo, J., joined by Ward and Clark, JJ., dissenting), believed that in this

case such an interpretation denied a constitutional right for 'certain remedy.' Justice Clark, in his dissent, observed that the majority's opinion in interpreting the statute of repose effectively precludes contribution actions in medical malpractice cases where a party files the complaint on or near the last day of the repose statute. See also *Pederson v. West* (1990), 205 Ill. App. 3d 200.

The Supreme Court invites the General Assembly to consider whether * * * to amend the * * * time limit for filing contribution actions."

In response, a comprehensive proposal was drafted which the General Assembly passed as House Bill 1162 in its spring, 1993 session. H.B. 1162 proposed to create a single uniform two-year statute of limitations for both contribution and indemnity actions by amending section 13—204 of the Code of Civil Procedure (735 ILCS 5/13—204), with a retroactivity clause in section 13—204(d). H.B. 1162 was amendatorily vetoed by the Governor on August 20, 1993. The General Assembly did not take up the amendatory veto in its fall session, and the legislation died. *See* Legislative Synopsis and Digest, 88th Ill. Gen. Assembly, House Bill 1162 (1993 Final Ed.) at 1240-1241.

In the next annual session, the General Assembly engrafted the text of the former H.B. 1162 onto a pending bill, Senate Bill 433, as House Amendment No. 1, and also incorporated the text of the "amendments that were presented by the Governor" to H.B. 1162. That text included the "savings clause" language that the Governor had proposed to add to the retroactivity clause of section 13—204(d). The Governor's "savings clause" language was adopted *verbatim* in S.B. 433, and now comprises the second clause of section 13—204(d). (Transcript of Debates, 88th Illinois General Assembly, House of Representatives [85th Legislative Day, October 13, 1993], at 53 (remarks of Rep. Kaszak on Second Reading [amendments]); *id.* (91st Legislative Day; November 4, 1993), at 10 (Remarks of Rep. Turner on Third Reading [final passage]); *see also*, Transcript of Debates, 88th General Assembly, Senate

(88th Legislative Day, January 13, 1994), at 5-6 (Remarks of Sen. Hawkinson, on Concurrence with House Amendments [final passage].) Senate Bill 433, with the former H.B. 1162 and the Governor's changes included, was signed into law on March 31, 1994, and became Public Act 88-538.[3]

Governor Edgar is thus the author of the section 13—204(d) savings clause—including its oblique "fully vested" language—which the General Assembly adopted in 1994. The Governor's explanation of his language is the determinative (and only) expression of legislative intent. Governor Edgar's statement of the purpose of this language in his August 20, 1993, veto message on H.B. 1162 was as follows:

> "In addition, House Bill 1162 currently provides that the bill takes effect immediately and applies to all pending actions. This provision unfairly cuts off the rights of many parties in currently pending actions who have justifiably relied on the currently existing law, and also raises constitutional issues. The bill should be revised to address these problems."

Based on this explanation, it is clear that the intent to protect "fully vested" rights of "any party" was focused on parties already in litigation as of the effective date of the amended section 13—204, *i.e.*, plaintiffs or counterplaintiffs or third party plaintiffs who had already filed contribution or indemnity actions by January 1, 1995, in reliance on the then-existing limitation statutes. With "fully vested" rights seen clearly to refer to rights of plaintiffs that had filed actions, the two clauses of §13—204 are rendered consistent, and the seeming conflict between "fully vested" and "accrued" is reconciled. In this light, "fully vested" means "accrued *and* timely filed before January 1, 1995." The veto message explains, at least

---

[3] We note the prescient comments of the Illinois Bar Association's writers, reviewing the H.B. 1162 amendatory veto, who predicted that "[t]he meaning of this paragraph is likely to cause a great deal of consternation among attorneys and judges alike." IDC Quarterly, 4th Qtr., 1993 (Legis. Comm. Report; Hoffman and Glaves, 29.)

inferentially, why the Governor selected an untraditional phrase to effect the intended untraditional meaning.

Nevertheless, we find that as applied to plaintiffs (and we do not address these issues as applied to defendants), the Governor's "saving clause" as enacted by the General Assembly in section 13—204(d) prohibits the retroactive application of section 13—204 to claims that were *pending* as of January 1, 1995, when the amended section 13—204 took effect. We will give effect to that limited construction of the section 13—204 savings clause, and will not expand it further to encroach into— or to nullify—the retroactivity clause which is of equal dignity as both were simultaneously approved by both the legislature and the Governor.

## Conclusion

On this construction of the statute, we conclude that section 13—204 applies to this case, as the Claimant's indemnity claim was not filed before January 1, 1995. Accordingly, we must find that this claim is barred, as it was filed after March, 1995 when the two-year statute of limitations under section 13—204(b) of the Code of Civil Procedure (735 ILCS 5/13—204(b)) expired. We note that no constitutional attack has been advanced against the application of section 13—204 to this case, and our decision does not opine on any constitutional issue.

For the foregoing reasons, it is hereby ordered:

1. Respondent's motion to dismiss count II of the amended complaint as barred is granted; and

2. Count II of the amended complaint is dismissed.